UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHELE WILLIAMS<br><br>           Plaintiff,<br><br>           v.<br><br>THE HERSHEY COMPANY,<br><br>           Defendant. | Civil Action<br><br>No. 1:20-CV-09394-KMW-MJS<br><br>**OPINION** |

Ian M. Bryson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103

    *Counsel for Plaintiff Michele Williams*

Punam P. Alam, Esquire
Robin H. Rome, Esquire
Nukk-Freeman & Cerra, P.C.
26 Main Street, Suite 301
Chantham, NJ 07928

    *Counsel for Defendant The Hershey Company*

**WILLIAMS, District Judge:**

    **I.    INTRODUCTION**

    Plaintiff Michele Williams ("Plaintiff") brings this action against her former employer, The Hershey Company ("Hershey"), alleging that Hershey discriminated and retaliated against her in violation of the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. §§ 10:5-1, *et seq.*

1

Presently before the Court is Hershey's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56, which Plaintiff has opposed. For the reasons set forth below, Hershey's Motion is granted.

## II. BACKGROUND

### A. **Plaintiff's Employment**

Plaintiff began working for Hershey as a retail sales representative in September 2003, and continued in this role until she was terminated on April 25, 2019. *See* Def.'s Statement of Material Facts ("Def.'s SMF") ¶¶ 1, 107. According to Hershey, Plaintiff was terminated for numerous performance deficiencies and violations of company policy that occurred between 2018 and 2019, including (1) continuing to use her company credit card for personal expenses, despite previous warnings; (2) failing a drug and alcohol screening following a work event where several employees reported that Plaintiff smelled of alcohol; (3) missing scheduled meetings, falling asleep during a work meeting, and poor leadership; (4) failing to appear for a random substance screening, as required by a last chance agreement Hershey had extended to her; and (5) failing to report an accident with her company-issued vehicle after she rear-ended another driver. *See id.* ¶¶ 31–60, 64–90.

Plaintiff, however, disagrees that these were the real reasons why Hershey terminated her. Rather, Plaintiff believes that Hershey unlawfully terminated her in retaliation for having taken two separate leaves of absence under the FMLA. Plaintiff's first leave of absence occurred in 2016, which she took not only to undergo knee surgery, but also to receive in-patient treatment at a drug and alcohol rehabilitation facility. *See id.* ¶ 15; *see also* Pl.'s Supplemental Statement of Material Facts ("Pl.'s SSMF") ¶ 7. In 2018, Plaintiff took a second medical leave of absence for approximately six months for what she alleges was a "flare up" from then-undiagnosed Crohn's

disease. *See* Def.'s SMF ¶ 23; *see also* Pl.'s SSMF ¶ 8. In addition to retaliation, Plaintiff, who is 61 years old, also claims that her termination was also a discriminatory discharge on the basis of her age as well as certain alleged disabilities (*i.e.*, "knee replacement[ ] and Crohn's [d]isease"). *See* Pl.'s Br. at 10–12.

### B. Plaintiff's Bankruptcy and Civil Actions

On September 13, 2019—less than five months after her termination—Plaintiff filed for Chapter 13 bankruptcy protection in the U.S. Bankruptcy Court for the District of New Jersey. Def.'s SMF ¶ 110.[1] Upon filing a bankruptcy petition, debtors like Plaintiff have "an affirmative duty of full disclosure." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996). Consistent with this duty, debtors are required to file with the bankruptcy court "a schedule of assets and liabilities" and as well as "a statement of [their] financial affairs." 11 U.S.C. § 521(a)(1)(B)(i), (iii). In this schedule, debtors must disclose, among other things, any and all "[c]laims against third parties," regardless of whether the debtor had in fact "filed a lawsuit or made a demand for payment." Def.'s Ex. II (ECF No. 60-38 at 8); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("[I]t has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy conte[x]t."). "This disclosure obligation is crucial to the effective functioning of the federal bankruptcy system, as creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan." *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 50 (3d Cir. 2018) (internal quotation marks omitted).

---

[1] *See In re Williams*, No. 19-27616-CMG (Bankr. D.N.J.).

3

Although Plaintiff submitted a schedule of her assets with the bankruptcy court, she did not disclose any claim she believed she had against Hershey at that time. *See* Def.'s SMF ¶ 113; *see also* Def.'s Ex. II (ECF No. 60-38 at 8). However, on July 24, 2020—approximately ten months after Plaintiff initially filed her bankruptcy petition—Plaintiff initiated a civil action in this Court against Hershey in which she asserted various causes of action related to her April 2019 termination. Even though Plaintiff commenced this civil action after she filed for bankruptcy, her duty to disclose her claims to the bankruptcy court was "continuous throughout the course of [the] bankruptcy proceeding." *Danise*, 738 F. App'x at 50. Thus, even if Plaintiff was perhaps initially unaware of her claims when she first filed for bankruptcy, she nevertheless had "an obligation to amend the bankruptcy schedule and disclose [her] claims" once she became aware of them. *DePasquale v. Morgan Stanley Smith Barney LLC*, No. 10-6828 WJM-MF, 2011 WL 3703110, at *3 (D.N.J. Aug. 23, 2011). Plaintiff, however, never amend or attempt to amend her bankruptcy schedule to disclose her claims against Hershey. *See* Def.'s SMF ¶¶ 116–17. Indeed, until the bankruptcy proceeding closed on December 7, 2020, Plaintiff actively pursued her claims in this Court, while simultaneously representing to the bankruptcy court that no such claims existed. *See id.*

### C. Hershey's Motion for Summary Judgment

On August 15, 2022, Plaintiff admitted during her deposition that she had never disclosed her claims against Hershey to the bankruptcy court, but did not explain why she had failed to do so. *See* Pl.'s Dep. Tr. 66:4–73:4. Weeks after her deposition testimony—and nearly two years after the bankruptcy proceedings had concluded—Plaintiff filed a motion with the bankruptcy court seeking to reopen the proceedings specifically to disclose her claims against Hershey. *See* Def.'s Ex. KK (ECF No. 40). Therein, Plaintiff expressly acknowledged that she had failed to disclose

4

her claims against Hershey as assets and recognized that her claims in this lawsuit "may be barred by the by the bankruptcy discharge as they were not listed as [ ] asset[s] on the filed schedules." *Id.* at 3. Although the bankruptcy court subsequently scheduled a hearing on Plaintiff's motion for November 16, 2022, Plaintiff ultimately withdrew her motion the day before the hearing.[2] *See* Def.'s Supp. Ex. B (ECF No. 78-3).

On November 14, 2022, Hershey filed the instant Motion for Summary Judgment invoking the doctrine of judicial estoppel as to the entirety of the Amended Complaint due to Plaintiff's failure to disclose her claims against it to the bankruptcy court (ECF No. 60).[3] Judicial estoppel "is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P.*, 81 F.3d at 358. It "frequently arises in the context of a failure to schedule a claim as an asset in a bankruptcy, and the inconsistent pursuit of the undisclosed claim." *Danise*, 738 F. App'x at 50. "When properly invoked, judicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001).

---

[2] *See* Withdrawal of Document, *In re Williams*, No. 19-27616-CMG (Bankr. D.N.J. Nov. 15, 2022), ECF No. 90.

[3] After Hershey moved to dismiss her initial seven-count Complaint, Plaintiff submitted an Amended Complaint in which she voluntarily dismissed several of her claims, including, among others, those for discriminatory discharge and hostile work environment on the basis of sex under the NJLAD (ECF Nos. 1, 8). Thereafter on April 29, 2021, the Honorable Judge Robert B. Kugler dismissed Plaintiff's claim for hostile work environment on the basis of age under the NJLAD (ECF Nos 10–11). Thus, the only claims subject to summary judgment are those remaining in the Amended Complaint: FMLA retaliation (Count I); NJLAD discrimination on the basis of age and disability (Count II); hostile work environment under the NJLAD based on disability (Count III); and retaliation under the NJLAD (Count IV).

### III. STANDARD OF REVIEW

A court may grant summary judgment when the materials of record "show[ ] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256–57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from

6

the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

IV. **DISCUSSION**

The basic principle underlying judicial estoppel is that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Ryan Operations G.P.*, 81 F.3d at 358. Even so, judicial estoppel is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be," but rather is applied to prevent litigants from "playing fast and loose with the courts." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (internal quotation marks omitted). Thus, "[j]udicial estoppel may be imposed only if: "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Bulger*, 243 F.3d 773, 777–78. The Court considers each factor in turn.

    i. *<u>Inconsistent Positions</u>*

Beginning with the first prong of the analysis, the Court considers whether Plaintiff has asserted irreconcilably inconsistent positions. In this case, Plaintiff's claims are predicated on her employment with and ultimate termination from Hershey. When Plaintiff filed for bankruptcy following her termination, she was required to disclose to the bankruptcy court any and all "[c]laims against third parties," regardless of whether she had in fact "filed a lawsuit or made a

demand for payment." Def.'s Ex. II (ECF No. 60-38 at 8).[4] Yet, even after she initiated this lawsuit in July 2020, Plaintiff at no point disclosed or attempted to disclose her claims against Hershey to the bankruptcy court. Thus, Plaintiff's position during the bankruptcy proceedings—that she had no claims against Hershey—is inconsistent with her active and simultaneous pursuit of said claims in this case for nearly three years. For these reasons, the first prong of the analysis is easily satisfied. *See Lewis v. Eberle & BCI Servs., LLC*, 11-4661, 2013 WL 4483529, at *2 (D.N.J. Aug. 19, 2013) ("Plaintiff took inconsistent positions by failing to amend her bankruptcy filings while at the same affirmatively taking pursuing and eventually filing this present action.").

### ii. *Inference of Bad Faith*

Turning next to the second prong of the analysis, the Court considers whether Plaintiff maintained her inconsistent position in bad faith. "[T]he doctrine of judicial estoppel does not apply when the prior position was taken because of a good faith mistake rather than as a part of a scheme to mislead the court." *Danise*, 738 F. App'x at 51 (internal quotation marks omitted) (alteration in original). However, a "rebuttable inference of bad faith arises" when the record evidence demonstrates "both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." *Krystal Cadillac*, 337 F.3d at 321. To this end, the Court looks at the record as a whole to determine whether "an inference of deliberate manipulation" can be drawn. *Ryan Operations G.P.*, 81 F.3d at 363.

Against the backdrop of the record in this case, it can hardly be disputed that Plaintiff had knowledge of her claims against Hershey. *See Danise*, 738 F. App'x at 51 ("If a debtor has enough information prior to confirmation of her bankruptcy plan to suggest that a possible claim exists,

---

[4] Although Plaintiff does not specify when precisely she knew she had claims against Hershey, the allegations in both her Complaint and her Amended Complaint—as well as the record evidence—strongly suggest that Plaintiff knew of her claims either before or contemporaneously with her filing for bankruptcy.

8

then it is a 'known' claim that must be disclosed in the bankruptcy petition."). A motive to conceal her claims is evidenced by the litany of monetary damages she demands, including "past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; [and] punitive damages." Am. Compl. at 8; *see also Danise*, 738 F. App'x at 51 ("A motive to conceal is apparent from the damages that [plaintiff] seeks."). If Plaintiff had disclosed her claims, it "may have affected the size of the bankruptcy estate, to the benefit of [Plaintiff's] creditors and to her financial detriment." *Danise*, 738 F. App'x at 51. Her omission—coupled with the fact that she only sought to rectify her omission after she was confronted and after the bankruptcy proceeding was long closed—is strongly suggestive of "deliberate manipulation." *Ryan Operations G.P.*, 81 F.3d at 363.[5]

Glaringly, Plaintiff offers no explanation whatsoever as to why she did not disclose her claims to the bankruptcy court, much less attempt to claim that it was a "careless," "inadvertent," or "good faith mistake."[6] *Id.* at 364. Because Plaintiff has not offered any evidence to rebut the inference of bad faith, the Court finds that, "absent the availability of lesser sanctions, judicial estoppel is appropriate." *Danise v. Saxon Mortg. Servs., Inc.*, No. 15-06062, 2016 WL 7340287, at *5 (D.N.J. Dec. 19, 2016) (noting plaintiff's failure to offer evidence to rebut inference of bad faith), *aff'd*, 738 F. App'x at 51.

---

[5] Curiously, Plaintiff does not dispute that she had knowledge of her claims during the course of the bankruptcy proceedings. Nor does she deny the obvious and logical motive to do so.

[6] Having reviewed the entirety of the record, the Court notes that Plaintiff has apparently declined to offer any affidavit or certification explaining her omission. Equally silent is her Response to Hershey's Statement of Material Facts (ECF No. 75) and her Supplemental Statement of Material Facts (ECF No. 75-1). Far from outright claiming a good faith mistake, Plaintiff's Opposition Brief makes a single, passing reference to an "accidental omission," but does not otherwise point to any evidence to support that suggestion. *See* Pl.'s Opp. at 4.

9

### iii. *Availability of Lesser Sanctions*

Lastly, the Court must determine whether any lesser sanction is appropriate. At the outset, the Court notes that Plaintiff has not suggested any lesser sanction, but has rather offered two arguments that presumably seek to stave off any sanction at all.

First, Plaintiff submits that judicial estoppel should not be applied because she "attempted to rectify her omission" by filing a motion to reopen in the bankruptcy court specifically to disclose her claims. Pl.'s Opp. at 4. But this argument completely overlooks that it had taken her nearly three years to do so. It likewise obfuscates the fact that she endeavored to do so only after she was confronted with her nondisclosure, well after the bankruptcy proceedings had closed. In any case, whatever redeeming value Plaintiff seeks to ascribe to her omission falls flat when considering that she ultimately abandoned her effort to disclose and withdrew her motion from the bankruptcy court. "The bankruptcy rules were clearly not intended to encourage this kind of inadequate and misleading disclosure by creating an escape hatch debtors can duck into to avoid sanctions for omitting claims once their lack of candor is discovered." *Krystal Cadillac*, 337 F.3d at 321. Simply stated, this Court is not "impressed by [Plaintiff's] eleventh hour candor." *Id.*

Second, Plaintiff argues that because her creditors were paid in full, judicial estoppel should not apply because she did not "benefit" from her nondisclosure. *See* Pl.'s Opp. at 4. But it has long been the law that "the doctrine of judicial estoppel does not contain a requirement that a party must have benefitted from [her] prior position in order to be judicially estopped from subsequently asserting an inconsistent one." *Lewis*, 2013 WL 4483529, at *1; *see also Ryan Operations G.P.*, 81 F.3d at 361 ("We readily conclude that the doctrine of judicial estoppel in this circuit contains no such requirement."). "[T]he presence or absence of any such benefit is merely a factor in determining whether the evidence would support a conclusion of bad faith." *Krystal*

*Cadillac*, 337 F.3d at 324. To the extent this factor can have any import here, it does little to weigh in her favor. Though Plaintiff's debts may have been satisfied, the impact of her nondisclosure "must be measured in more than monetary terms" because "nondisclosures affect creditors' willingness to negotiate their claims and enhance the debtor's bargaining position by making the pot that creditors look to for recovery appear smaller than it really is." *Krystal Cadillac*, 337 F.3d at 325. Without the knowledge that Plaintiff was simultaneously pursuing her claims for monetary damages, her creditors "could not make an informed choice of how to pursue their interests." *Coles v. Carlini*, No. 10-6132, 2013 WL 3811642, at *11 (D.N.J. July 22, 2013).

Beyond the potential harm to creditors, a debtor's nondisclosure also threatens "the integrity of both the bankruptcy process and the judicial process." *Krystal Cadillac*, 337 F.3d at 325. To apply a lesser sanction here would not only reward Plaintiff for misleading the bankruptcy court, but would also condone her "wait and see if I get caught" approach to her mandatory disclosure obligation during the bankruptcy proceeding. *See DePasquale*, 2011 WL 3703110, at *5. It would likewise "send a message that a debtor should consider disclosing potential assets only if [s]he is caught concealing them." *Krystal Cadillac*, 337 F.3d at 325 (internal quotation marks omitted). Having heard no other appropriate sanction from Plaintiff, the Court finds that nothing short of judicial estoppel would appropriately address her nondisclosure. As such, Plaintiff is judicially estopped from pursuing her claims against Hershey.

V. **CONCLUSION**

For the reasons articulated above, Hershey's Motion for Summary Judgment is granted.

Date: June 26, 2023

                                            */s/ Karen M. Williams*
                                            KAREN M. WILLIAMS
                                            UNITED STATES DISTRICT JUDGE